STATE, ANSEL M. AND HARRIET L. DAVISON, PROSECUTORS, v. EZEKIEL SILVERS, COLLECTOR IN THE TOWNSHIP OF CRANBURY, MIDDLESEX COUNTY.

1. An assessor has a right to revise his opinions as to values, deductions and other matters involved in the assessment, until his determination as to the amount of tax to be levied against the individual is officially entered in his tax-book.

2. By force of the supplement to the tax act, approved April 17th, 1876, (*Rev., p.* 1163,) a land owner acquired no right to have deducted from the value of his land, for taxing purposes, a mortgage which, independently of that supplement, was exempt from taxation.

On *certiorari.* In matter of taxation.

Argued at June Term, 1879, before Justices VAN SYCKEL, DIXON and REED.

For the prosecutors, *S. M. Schanck.*

For the defendant, *James Buchanan.*

The opinion of the court was delivered by

DIXON, J. This *certiorari* brings up the taxes against the prosecutors in the township of Cranbury, Middlesex county, for the year 1877, and its object is to have deducted from their assessable property $3441.66, the amount of a mortgage upon their farm, which, as purchasers, they had assumed to pay.

State, Davison, pros., v. Silvers.

The first reason urged is, that the deduction was in fact made by the assessor, and afterwards, without notice to them, and therefore illegally, stricken out. The proof shows that the assessor, in going round with the field-book of his predecessor, received from the prosecutors a written statement, without oath, of their taxable property, claiming a deduction for this mortgage ; that thereupon he entered the particulars of this statement in pencil in his field-book, using a pencil, he says, so that he might easily make alterations, if necessary ; that afterwards, in revising his assessment with the township committee, he determined not to allow the deduction, and accordingly made out his duplicate without subtracting the amount of this mortgage, and so returned it to the collector. These facts indicate that the allowance was never made by the assessor. His entries in the field-book did not constitute his assessment, but were merely preliminary thereto. The first section of the act concerning taxes, approved April 14th, 1846, (*Rev., p.* 1140,) requires the assessor to make out annually an exact list of the persons, lands, chattels, effects and estates, including certainties, made ratable by law, by which list all assessments during the year shall be regulated and made. In practice, the assessors generally regard the field-book as being the list thus required. After this list is completed, then comes the duty of making the assessment, included in which are the final ascertainment of each individual's taxable property and the apportioning to each of his share of the sum to be raised. The result of this determination should, theoretically, be entered in the assessor's tax-book, a transcript of which, therefore, called a duplicate, is to be furnished to the collector ; but probably, in many cases, this judgment is first declared on the duplicate itself, which thus becomes the recognized record of the assessment. Until the assessor has so entered his determination of the amount of tax to be levied upon each, he has judicial control of the whole subject, and may reconsider his valuations, deductions and any other matters involved in his final decision. It is only this ultimate judgment, offi-

cially announced, that is unalterable. *State, Shreve, pros.*, v. *Crosley*, 7 *Vroom* 425.

In the case in hand, the assessor evidently did not make his assessment until his consultation with the township committee, and, in then making it, he determined not to allow to the prosecutors the deduction which probably he had before intended to permit.

Nor is there foundation for the suggestion that this conference with the committee was after the time accorded by law to the assessor for completing his assessment. That officer says it was on the last day allowed to him—June 15th—and no witness contradicts him. It was evidently before the duplicate was written, for no indication of the deduction, or of any change in the assessment, appears upon that book, and the duplicate was submitted to the committee on June 23d. That no mention of any meeting on June 15th is made upon the minute-book of the committee, is due doubtless to the fact that the consultation was informal.

The prosecutors next insist that in law they were entitled to the deduction, under either of two supplements to the tax act—first, the twentieth section of the supplement of April 11th, 1866, (*Rev., p.* 1157); secondly, the supplement of April 17th, 1876, (*Rev., p.* 1163.)

A complete answer to the claim under the earlier statute is, that a taxpayer is not entitled to the deduction there authorized, unless he has furnished the prescribed statement on oath. *State, Mount, pros.*, v. *Parker*, 3 *Vroom* 341 ; *State, Perkins, pros.*, v. *Bishop*, 5 *Vroom* 45 ; *State, Forst, pros.*, v. *Parker*, 5 *Vroom* 71 ; *State, Robbins, pros.*, v. *Horner*, 9 *Vroom* 212.

Under the later act, however, it has been decided, a sworn statement is not a condition precedent to the deduction. While the assessor may demand it, an allowance without it is legal. *State, Vail's Ex'rs, pros.*, v. *Runyon*, *ante* 98.

In the present case, the assessor was clearly satisfied of the existence of the mortgage and of the propriety of the claim so far as the prosecutors could make it proper, and they refrained from swearing to their claim, merely because the offi-

cer did not ask for an oath. Whether, in such circumstances, the prosecutors could demand as a right a deduction which the law permitted the assessor to award, our opinion upon a point presently to be mentioned renders it unnecessary for us to decide.

There is, in our judgment, an insuperable difficulty in the way of allowing the prosecutors' claim, under either of the statutes whose aid is invoked. In *State, Montgomery, pros., v. Trenton,* 11 *Vroom* 89, the Supreme Court, speaking of the twentieth section of the supplement of 1866, which authorizes a deduction of debts owing to debtors residing within the state, declares it to be manifest that there was no purpose to release the debtor unless the tax could be collected from the creditor. The same design is equally conspicuous in the supplement of 1876. This statute does not enact that all mortgages upon realty may be deducted from the value of the land at the instance of the land owner, nor does it in terms define what class of them shall have such quality. Its expressed and primary object is to grant to mortgagees exemption from taxation in respect of their mortgages, and, of course, it must have been intended to apply only to those mortgages which before were ratable. A condition annexed to this grant is that the land owner shall not claim a deduction of the amount of the mortgage from the value of his land. Now, before this statute, the land owner had no right to make the claim here indicated; he was taxable on the full and actual value of his land. *Rev.,* p. 1163, *pl.* 114, and p. 1150, *pl.* 61. It therefore became necessary, in construing this statute so as to give effect to the whole intent of the legislature, to decide that in this condition there was implied a right on the part of the land owner to insist that he should be taxed on the value of his equity of redemption merely; otherwise the condition would be wholly meaningless. It is by force of this implication alone that the land owner possesses any title to deduction. But, clearly, this implied right cannot be extended beyond the range of the condition out of which it arose, the class of cases which that condition affects; and it is also plain that the condition

is confined to the subject matter of the grant, for the very purpose of a condition annexed to a grant is to defeat the operation of the grant in certain cases where, without the ·condition, the grant would take effect. Hence, as the grant of exemption related only to mortgages which, but for this statute, would be taxable against the mortgagees, the condition could apply to none others, and the land owner's right implied therein must be equally limited.

The mortgage in question is not of this character. It was given to the Chancellor of the state to secure payment of the interest of $3441.66 to a widow annually during her life, and of that principal sum, on her death, to the Chancellor in trust, to be divided among four children named. In the case of *Trustees of Public Schools* v. *Trenton*, 3 *Stew.* 667, it was decided that a mortgage of precisely the same description, (except that the principal was payable directly to the beneficiaries,) was exempt from taxation, for the reason that it represented property which the state, by virtue of its sovereignty, had drawn into its courts, and hence was entitled to stand in the same position as public property; that, therefore, it was excluded, by implication, from the class of things over which the power of taxation, as ordinarily employed, extends, and the general language of statutes prescribing the property which shall be taxable was not applicable thereto. This mortgage must be regarded as in the same category.

Since, then, this mortgage was, independently of the act of 1876, exempt from taxation, the prosecutors had no right, by force of that statute, to have its amount deducted from the value of their land for the purpose of taxation.

The assessment should be affirmed, with costs.